[PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

_____

No. 20-12281

_____

KIDANEMARIAM KASSA,

Plaintiff-Appellant,

*versus*

FULTON COUNTY, GEORGIA, et al.

Defendants,

ANTIONETTE STEPHENSON,
individually,

Defendant-Appellee.

————————————————

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:17-cv-02068-SDG

————————————————

Before JILL PRYOR, GRANT, and MARCUS, Circuit Judges.

JILL PRYOR, Circuit Judge:

This appeal requires us to decide whether absolute prosecutorial immunity protects an assistant district attorney from suit for failing to ensure the cancellation or recall of a material witness warrant.[1] In this case, an assistant district attorney in Fulton County, Georgia, Antionette Stephenson, obtained a material witness warrant requiring Kidanemariam Kassa to appear as a witness at trial. Kassa voluntarily appeared at trial, making execution of the warrant unnecessary. After the trial ended, Stephenson failed to inform the trial judge that the warrant needed to be recalled. A few months later, a police officer arrested Kassa and placed him in jail because of the outstanding warrant. A judge eventually ordered Kassa's release.

---

[1] Kassa's amended complaint and the district court's order dismissing his claim use the phrases "cancel the warrant" and "recall the warrant" interchangeably. We do the same here.

Kassa brought a 42 U.S.C. § 1983 action alleging, among other things, that Stephenson's failure to initiate the warrant's cancelation violated his Fourth and Fourteenth Amendment rights. Stephenson moved to dismiss the suit arguing that as a prosecutor she was entitled to absolute prosecutorial immunity. The district court agreed and dismissed Kassa's claims against her.

On appeal, Kassa argues that the district court erred in dismissing the case because Stephenson was not entitled to absolute prosecutorial immunity for her failure to inform the judge that the warrant should be recalled. After careful consideration, and with the benefit of oral argument, we hold that absolute prosecutorial immunity does not extend to Stephenson's failure to take action to cancel the warrant. The district court thus erred in dismissing Kassa's complaint. We reverse and remand to the district court for further proceedings.

## I.    BACKGROUND

Kassa was a taxicab driver who sometimes drove routes in downtown Atlanta. One day, someone tried to rob Kassa while he was driving downtown. The Fulton County District Attorney's Office eventually indicted an individual for the attempted robbery. As the criminal trial approached, Kassa began experiencing medical problems. He told the District Attorney's Office about his medical issues. The trial was continued to a later date so that Kassa would be available to testify.

Sometime later, Stephenson allegedly told a state court judge that Kassa was avoiding a subpoena to testify at trial. Stephenson obtained a material witness warrant from the judge. The warrant was never executed because Kassa voluntarily appeared at the trial to testify. In Fulton County, it was customary for prosecutors to make an oral motion to cancel a material witness warrant after a witness testified.[2] But Stephenson failed to do this. At the end of the trial, Kassa remained unaware of the active warrant.

Several months after the trial, Kassa was involved in an accident while driving his taxicab. The Atlanta Police Department officer who arrived at the accident scene arrested Kassa because of the active material witness warrant. Police officers placed Kassa in the Fulton County Jail. Six days after his arrest, a state court judge ordered his release.

Kassa filed suit against Stephenson and several other defendants.[3] In his amended complaint, Kassa asserted a § 1983 claim

---

[2] Under O.C.G.A. § 17-7-25, a Georgia "court of inquiry may order the arrest of witnesses if required to compel their attendance." Georgia law does not provide specific procedures for cancelling a material witness warrant. At oral argument, Stephenson's counsel conceded that prosecutors in the Fulton County District Attorney's Office make oral motions to cancel material witness warrants after the witness testifies.

[3] Kassa also asserted claims against Fulton County, former Fulton County District Attorney Paul Howard, an investigator named Pierre Easley who worked for the county, and an unnamed defendant, John Doe, who worked for the Fulton County Sheriff's Office. The district court dismissed Kassa's claims

against Stephenson for "Denial of Due Process, Malicious Prosecution & Illegal Seizure" based on, among other things, Stephenson's failure to take appropriate action to cancel the warrant. Doc. 18 at 10.[4] Stephenson filed a motion to dismiss, arguing that as a prosecutor she was entitled to absolute prosecutorial immunity. The district court agreed and dismissed the claims against her. The court determined that Stephenson was entitled to immunity because "the act of obtaining the material witness warrant" and "subsequent failure to ensure that the warrant was cancelled or recalled" related "to conduct that occurred in the context of her role as an advocate of the State during the judicial proceedings."[5] Doc. 37 at 6.

---

against Howard and Doe and partially dismissed his claims against Easley. Kassa does not challenge on appeal the district court's dismissal of these claims.

[4] "Doc." numbers refer to district court docket entries.

[5] Kassa also asserted a state-law negligence claim against Stephenson. The district court dismissed this claim, too, based on prosecutorial immunity. The district court also dismissed the state-law claim on the alternative ground that Kassa failed to allege that Stephenson "performed any ministerial duty negligently or acted with malice in failing to ensure that the warrant was cancelled." Doc. 37 at 12. Kassa challenged this decision on appeal but did not address the alternative ground. In his reply brief, Kassa concedes that he "did not appeal from the district court's alternative holding that Plaintiff's complaint failed to allege the existence of a ministerial duty." Appellant Reply Br. at 1 n1. "When an appellant fails to challenge properly on appeal one of the grounds on which the district court based its judgment, he is deemed to have

6                       Opinion of the Court                    20-12281

Kassa timely appealed.

## II.    STANDARD OF REVIEW

We review *de novo* a district court's decision to grant "a motion to dismiss on the basis of immunity, construing all inferences to be drawn therefrom in the light most favorable to the plaintiff and accepting all well-pleaded factual allegations as true." *Weissman v. Nat'l Ass'n of Sec. Dealers, Inc.*, 500 F.3d 1293, 1295 (11th Cir. 2007).

## III.    DISCUSSION

Kassa contends that absolute prosecutorial immunity does not extend to Stephenson's failure to inform the judge that the warrant needed to be recalled. We agree. We begin our analysis with an overview of the absolute prosecutorial immunity doctrine. We then explain why it does not protect Stephenson for the conduct at issue here.

## A.    Absolute Prosecutorial Immunity Doctrine

The Supreme Court first examined absolute prosecutorial immunity as a limit on § 1983 liability in *Imbler v. Pachtman*, where it considered "whether a state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a

---

abandoned any challenge of that ground." *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014). We therefore affirm the district court's dismissal of Kassa's negligence claim against Stephenson.

criminal prosecution" was subject to suit for allegedly violating a defendant's constitutional rights. *Imbler v. Pachtman*, 424 U.S. 409, 410 (1976). In *Imbler*, an individual sued a deputy district attorney for allegedly using false testimony and suppressing evidence during his criminal trial. *Id.* at 415–16. The Supreme Court concluded that the deputy district attorney was entitled to absolute prosecutorial immunity because his "activities were intimately associated with the judicial phase of the criminal process." *Id.* at 430. The Court explained that absolute immunity, which had common law roots, prevented "harassment by unfounded litigation" which could "cause a deflection of the prosecutor's energies from his public duties" and limit the prosecutor's "independence of judgment." *Id.* at 423.

Since *Imbler*, the Supreme Court has employed a "functional" approach to determine whether an individual is entitled to absolute prosecutorial immunity. *Burns v. Reed*, 500 U.S. 478, 486 (1991). This is a fact-specific inquiry that "looks to the nature of the function performed, not the identity of the actor who performed it." *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (internal quotation marks omitted). "[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Burns*, 500 U.S. at 486. This approach makes clear that absolute prosecutorial immunity "is not grounded in any special esteem for those who perform these functions, and certainly not from a desire to shield abuses of office, but because any lesser degree of immunity could impair the judicial process itself."

*Kalina v. Fletcher*, 522 U.S. 118, 127 (1997) (internal quotation marks omitted). Using this approach, the Supreme Court has extended absolute immunity to prosecutors presenting evidence in support of a search warrant. *Burns*, 500 U.S. at 491. It has also approved absolute immunity for prosecutors who failed to institute an information-sharing system among junior attorneys that was "directly connected with the prosecutor's basic trial advocacy duties." *Van de Kamp v. Goldstein*, 555 U.S. 335, 346 (2009).

In applying absolute prosecutorial immunity, our Court has echoed the Supreme Court's focus on the fact-specific functional approach, emphasizing that "[a] prosecutor is entitled to absolute immunity for 'acts undertaken . . . in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the state.'" *Mastroianni v. Bowers*, 173 F.3d 1363, 1366 (11th Cir. 1999) (quoting *Buckley*, 509 U.S. at 273). We have previously extended absolute immunity to prosecutors for "filing an information without investigation, filing charges without jurisdiction, filing a baseless detainer, offering perjured testimony, suppressing exculpatory evidence, refusing to investigate complaints about the prison system, and threatening further criminal prosecutions." *Hart v. Hodges*, 587 F.3d 1288, 1295 (11th Cir. 2009) (alterations adopted) (internal quotation marks omitted).

With these principles from the Supreme Court's and this Circuit's caselaw in mind, we turn to whether Stephenson is entitled to absolute prosecutorial immunity for failing to initiate recall or cancellation of the warrant against Kassa.

B.    **Application of the Absolute Prosecutorial Immunity Doc-
      trine**

We have never applied the functional approach to deter-
mine whether absolute prosecutorial immunity protects a prosecu-
tor who failed to initiate the cancellation of a material witness war-
rant after trial. Kassa argues that we should adopt the Third Cir-
cuit's approach in *Odd v. Malone*, 538 F.3d 202 (3d Cir. 2008),
which denied absolute prosecutorial immunity under a very simi-
lar set of facts. For the following reasons, we agree.

*Odd* concerned two consolidated suits against prosecutors
who failed to ensure the cancellation of material witness warrants.
*Odd*, 538 F.3d at 205. In one of these cases, a prosecutor obtained
a warrant for a witness who failed to appear at a preliminary hear-
ing in a murder prosecution. *Id.* at 206. Officers arrested the witness
and placed him in custody to ensure his appearance at another pre-
liminary hearing. *Id.* The murder case was dismissed before the
prosecutor called the witness to testify. *Id.* The prosecutor failed to
inform the judge that the witness was in custody, however, so the
judge did not release him. *Id.* The witness eventually obtained an
attorney who secured his release after 58 days in jail. *Id.*

The witness brought a § 1983 claim against the prosecutor.
*Id.* On appeal, the Third Circuit considered whether the prosecutor
was entitled to absolute prosecutorial immunity. *Id.* at 207. The
Third Circuit, employing the functional approach, concluded that
he was not immune from suit. *Id.* at 208, 217. The Third Circuit
pointed out that "keeping a third-party witness in state custody

after the termination of the proceeding in which he was to testify has nothing to do with conducting a prosecution for the state." *Id.* at 215 (emphasis omitted). The court reasoned further that the prosecutor needed only to notify the judge that the witness remained in jail, which did not require the prosecutor to engage in any advocacy. *Id.* at 216. It explained that there was no common law tradition of extending absolute immunity to prosecutors in such a situation. *Id.* It concluded by noting that its decision applied only to detained witnesses—not defendants—and, for this reason, was unlikely to cause a surge in lawsuits against prosecutors that would adversely affect prosecutorial independence. *Id.*

As an initial matter, we believe the Third Circuit's reasoning is consistent with cases from this Circuit and from the Supreme Court. The Third Circuit's analysis employed the functional approach that the Supreme Court has consistently embraced. *Id.* at 208. And, like our caselaw, the *Odd* decision underscored the fact-specific nature of the inquiry, stating that its "prosecutorial immunity analysis focuses on the unique facts of each case and requires careful dissection of the prosecutor's actions." *Id.* at 210. We thus find *Odd* persuasive.

Applying *Odd*'s analysis, we conclude that Stephenson is not entitled to absolute prosecutorial immunity. The Third Circuit's decision to deny immunity turned on several facts that are also present in this case. Both the prosecutor in *Odd* and Stephenson failed to take action to recall warrants even though the judicial proceeding had concluded, and the witnesses no longer were needed. *Id.* at

20-12281               Opinion of the Court                    11

215. And so, as the Third Circuit explained, the arrest and confinement had "nothing to do with conducting a prosecution for the state." *Id.* (internal quotation marks omitted). In addition, Stephenson's counsel acknowledged during oral arguments that—like the prosecutor in *Odd*—Stephenson did not have to engage in any advocacy to initiate the warrant's recall. *Id.* at 216. She needed only to notify the judge. The notification required no exercise of professional judgment or legal skill. Because professional judgment played no role here, like the Third Circuit, we have no concern that litigation will adversely impact prosecutorial independence going forward. Allowing witnesses detained after trial to sue prosecutors for their inaction in cancelling warrants is unlikely to result in a "flood" of new litigation against prosecutors. *Id.* at 216. We agree with the Third Circuit that this is a "relatively clear example of a situation in which the prosecutor's role as an advocate for the state had concluded." *Id.* at 215.

Stephenson contends that *Odd* conflicts with the Supreme Court's decision in *Van de Kamp v. Goldstein*, 555 U.S. 335 (2009). In *Van de Kamp*, the Supreme Court had to decide whether a prosecutor should receive absolute prosecutorial immunity for certain administrative activities like training subordinates. *Id.* at 343–44. The Supreme Court concluded that immunity applied. *Id.* at 344. Stephenson argues that the Third Circuit based its holding in *Odd* on the administrative nature of the prosecutor's actions—a rationale she argues conflicts with *Van de Kamp*'s conclusion that prosecutors can receive absolute prosecutorial immunity for some

administrative actions. We disagree. It is true that the Third Circuit described the prosecutor's actions as administrative, *Odd*, 538 F.3d at 215–16, but the court applied the functional approach—looking at whether immunity is justified for the specific function in question—to conclude that the prosecutor's actions were not "'intimately associated with the judicial phase' of the litigation," *id.* at 214 (quoting *Imbler*, 424 U.S. at 430). This was consistent with Supreme Court precedent.

Stephenson also points to our decision in *Hart v. Hodges*, 587 F.3d 1288 (11th Cir. 2009), arguing that *Odd* is inconsistent with it. In *Hart*, a prosecutor, mistakenly believing that a prisoner had additional time on his state sentence, tried to transfer him to a state prison after a federal prison released him. *Id.* at 1291–92. The prisoner sued. *Id.* at 1293–94. The district court dismissed the suit based on absolute prosecutorial immunity. *Id.* at 1294. We affirmed on appeal. *Id.* at 1296–99. We noted that absolute "immunity may extend to certain post-sentencing conduct of a prosecutor." *Id.* at 1296. We then explained that the prosecutor was attempting "to advocate the judicial sentence he understood . . . had been imposed by the state trial court." *Id.* at 1298. And this activity was "so intimately associated with the judicial phase of the criminal process" that it "cloak[ed] [the prosecutor] with absolute immunity." *Id.* (internal quotation marks omitted).

Stephenson asserts that *Hart* conflicts with *Odd* because *Hart* extended absolute prosecutorial immunity to post-trial activities. The problem for Stephenson is that we based our decision in

*Hart* on the prosecutor's actions being intimately associated with the judicial process. But Stephenson does not say how her failure to initiate cancellation of the warrant was intimately associated with the judicial process. As we explained, the functional approach to applying absolute prosecutorial immunity is a highly fact-dependent inquiry. It may be the case in certain circumstances—such as those present in *Hart*—that absolute prosecutorial immunity extends to conduct after trial. In addition, our opinion says nothing about whether a prosecutor is entitled to absolute immunity for *seeking* a material witness warrant in connection with an *ongoing* judicial proceeding. Stephenson, however, has failed to show that absolute immunity protects her post-trial conduct here.[6]

## IV.    CONCLUSION

We conclude that the district court erred by determining that Stephenson was entitled to absolute prosecutorial immunity for failing to take action to cancel the material witness warrant.

---

[6] Stephenson contends that we should affirm the district court's order even if she was not entitled to absolute prosecutorial immunity. Specifically, she argues that her "alleged failure to ensure the warrant was recalled does not state a sufficient factual basis for a claim under 42 U.S.C. § 1983," or alternatively that she is entitled to qualified immunity. Appellee Br. at 11. Stephenson failed to raise those arguments before the district court, so we will not consider them on appeal. *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004). We leave it to the district court on remand to consider these arguments in the first instance.

14                        Opinion of the Court                        20-12281

According, we reverse the district court's order. We remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**